UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                        Case No. 2:22-cr-7

JENNIFER KAY LONGACRE,
                                        Hon. Hala Y. Jarbou

    Defendant.
_____/

## OPINION

Defendant, Jennifer Longacre is an inmate at a federal prison in Illinois. She filed a motion under 28 U.S.C. § 2255 to vacate her November 2022 sentence based on ineffective assistance of counsel (Def's Mot. to Vacate, ECF No. 45). She challenges the effectiveness of her representation on several grounds. She claims that her trial counsel failed to make certain arguments during her sentencing and failed to communicate with her about the legal details of her plea agreement. She also claims that her counsel failed to file a notice of appeal at Longacre's request. For the following reasons, the court will deny Longacre's motion, in part, and hold an evidentiary hearing on the remaining issue.

### I. BACKGROUND

In November 2022, Jennifer Longacre pled guilty to one count of possession with intent to distribute methamphetamine. The following facts, which are not disputed, are taken from Longacre's plea agreement (Plea Agreement, ECF No. 26). On August 3, 2021, Longacre was pulled over in Marquette County, Michigan. (*Id*. at 3.) She consented to a search of her vehicle during which officers found a bag in the center console that contained a white crystal-like substance. The substance was divided into one and two-ounce bags "consistent with distribution."

(*Id.*)  A DEA laboratory later confirmed that the bags contained 426 grams – nearly a pound – of methamphetamine.  (*Id.*)  Longacre later admitted that she possessed the methamphetamine and "intended to distribute it to others."  (*Id.*)

Longacre was indicted, and subsequently pled guilty to possession with intent to distribute methamphetamine under 21 U.S.C. § 841(a)(1), (b)(1)(C).  In her plea agreement, she stipulated to a base offense level of 32 based on her possession of 379.3 grams of pure methamphetamine.  (*Id.*; Presentence Investigation Report ("PSR") ¶ 34, ECF No. 40.)  Probation also recommended a two-point enhancement for Longacre's role in the drug dealing operation.  (PSR ¶ 39.)  Citing text message exchanges between Longacre and clients, the probation department claimed that Longacre occupied a leadership position in the enterprise.  They concluded that "she exercised decision making authority, recruited and/or directed accomplices, participated in the planning or organizing of the offenses and exercised control and authority over others."  (PSR ¶ 39.)  The probation department also recommended a three-point reduction for acceptance of responsibility, leaving the total offense level at 31.  (*Id.* ¶ 45.)  With a criminal history category of I and an offense level of 31, Longacre's guideline range is 108-135 months.  Longacre moved for a downward variance based on the nature and circumstances of the offense and her history and characteristics.  (Def's Mot. for Variance, ECF No. 35-2.)  The Court denied her motion, and ultimately imposed a middle-of-the-range sentence of 120 months.  (Order Denying Def's Mot., ECF No. 42.)

On March 30, 2023, Longacre filed a motion to set aside her sentence based on ineffective assistance of her counsel, Sarah Henderson.

## II. LEGAL STANDARD

A prisoner may move to vacate her sentence under 28 U.S.C. § 2255 if she can demonstrate that the sentence was imposed in violation of the constitution or laws of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence was in excess of the

maximum authorized by law, or that it "is otherwise subject to collateral attack." 28 U.S.C. § 2255. However, "Section 2255 does not provide relief for just any alleged error." *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by showing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

One way a petitioner can demonstrate a constitutional error is by showing they received constitutionally inadequate representation. Under the *Strickland* standard for ineffective assistance of counsel, the movant must show two things. First, "that the attorney's performance fell below 'prevailing professional norms.'" *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). "And second, that the attorney's poor performance prejudiced the defendant's case." *Id*. Prejudice is a high bar to clear. *Id*. at 419. The petitioner must demonstrate that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)). There are also "[n]o particular set of detailed rules" that courts can compare to counsel's conduct to determine whether their representation fell below a minimum standard. *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). Rather, courts must

"judge the reasonableness of counsel's challenged conduct on the facts of the particular case[.]" *Id.* at 690. However, where the attorney ignores or "disregards specific instructions from the defendant to file a notice of appeal," their conduct is presumptively professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Filing a notice of appeal is "a purely ministerial task." *Id.* A failure to file, therefore, cannot represent a strategic decision; rather, it reflects "inattention to the defendant's wishes." *Id.* Since the failure to file a notice of appeal amounts to arguably "the denial [an] entire proceeding itself," – the defendant's appeal as-of-right – it "demands a presumption of prejudice." *Id.* at 483.

When a habeas petitioner presents a factual dispute, "the habeas court must hold an evidentiary hearing." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (citing *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). However, if "the record conclusively shows that the petitioner is entitled to no relief," the court may decline to hold a hearing. A petitioner has made no credible claim for relief where their allegations "'are contradicted by the record, inherently incredible, or conclusions rather than statements of facts[.]'" *Id.* (citing *Arrendodo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

### III. ANALYSIS

Longacre argues that her trial counsel was ineffective on four grounds. First, she claims that her attorney neglected to file a notice of appeal at the conclusion of her sentencing despite her request that she do so. Second, she claims her attorney failed to argue the "amount and purity of the methamphetamine" that served as the basis for her conviction. (Def's Mot. to Vacate 6.) Third, Longacre claims "[d]efense counsel failed to argue the two-point enhancement for a leadership role." (*Id.* at 7.) Finally, she claims that her attorney failed to communicate with her, in general, and specifically "never explained that the 120 months I was sentenced [to] was a 'mandatory minimum.'" (*Id.* at 8.)

4

### A. Failure to file a notice of appeal

Longacre asks that her sentence be vacated as a result of her trial counsel's failure to file a notice of appeal on her behalf after Longacre requested she do so. If Longacre's allegation is true, then she is likely entitled to receive the relief she requests. As discussed above, a petitioner alleging ineffective assistance of counsel for failure to file a notice of appeal is entitled to a presumption on both prongs of a *Strickland* claim. *See Flores-Ortega*, 528 U.S. at 477, 483. It could, therefore, be inferred both that Henderson's representation fell below the minimum standard demanded by the Sixth Amendment, and that Longacre was prejudiced as a result. However, the record is too incomplete at this point to draw any conclusions. Longacre does not offer any supporting facts beyond the assertion that, "[d]efense counsel failed to file a notice of appeal when one was requested after sentencing." (Def's Mot. to Vacate 5.) Henderson, on the other hand, states in an affidavit that she both discussed the pros and cons of filing an appeal with Longacre, and that Longacre never asked her to file one. (Henderson Aff. ¶¶ 21, 22, ECF No. 51.) Henderson also provides what she claims is a contemporaneous memo she prepared after consulting with Longacre about filing an appeal in which she outlined their discussion. (Henderson File Mem., ECF No. 51-5.)

Where, as here, there is a factual dispute over whether a petitioner asked her trial counsel to file an appeal, an evidentiary hearing is required. *See United States v. Pola*, 778 F.3d 525, 534 (6th Cir. 2016.). In *Pola*, the Sixth Circuit Court considered a similar factual situation. Petitioner Pola claimed that his trial counsel did not file a notice of appeal on his behalf despite his request that the attorney do so, rendering his subsequent appeal untimely. *Id*. at 528-29. His trial counsel responded that he remembered discussing the possibility of an appeal with Pola but recalled no request to file one. *Id*. at 534. The court held that the district court abused its discretion by denying an evidentiary hearing on these facts, because Pola's "factual narrative" was not "inherently

5

incredible," and there was nothing in the record that "conclusively show[ed]" trial counsel's performance was not deficient. *Id*. The court also addressed the scenario where the two affidavits had conflicting narratives, holding that "an evidentiary hearing would [] be required even if [trial counsel] affirmatively stated that Pola never asked" to file an appeal. *Id*. Courts since *Pola* have left little doubt as to the extent of this holding. In *Hall v. United States*, the district court denied Hall's request for a hearing because it felt that to conclude otherwise "would 'reward' [him] for 'mere recitations of the word or phrase—such as 'requested' or 'instructed' or 'informed'—that case law suggests gives rise to a factual dispute for which an evidentiary hearing ordinarily should be conducted.'" *Hall v. United States*, No. 20-6439, 2022 WL 20527026, *3 (6th Cir. 2022). The Sixth Circuit disagreed, holding that "[Petitioner]'s statement that counsel failed to file a notice of appeal as requested satisfied his 'relatively light' burden of establishing his right to an evidentiary hearing." *Id*. (citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

The Government argues that the Court has the discretion to dismiss this motion without holding an evidentiary hearing. (*See* Gov't Resp. 9, ECF No. 54.) However, it only cites pre-*Pola* caselaw and non-controlling precedent for this conclusion. Accordingly, the Court will hold an evidentiary hearing on the issue of whether Longacre asked Henderson to file a notice of appeal on her behalf after sentencing.

### B. Failure to challenge the amount and purity of the methamphetamine

Next, Longacre claims that Henderson's representation was deficient because she failed to argue the amount and purity of the methamphetamine found in her car. Longacre's challenge here is not subject to any presumptions in her favor. She must demonstrate both that she received inadequate representation, and that she was prejudiced as a result. *Strickland*, 466 U.S. at 668. In addition, "*Strickland* requires a defendant to overcome the 'presumption that . . . the challenged

action might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 686 (2002) (citing *Strickland*, 466 U.S. at 689).

Longacre does not elaborate on how Henderson's failure to argue this point rendered her counsel deficient. In her plea agreement, Longacre stipulated to the fact that during the search after her arrest, "[t]he trooper found a bag in the center console of the vehicle that contained what the DEA laboratory concluded was 426 +/-.02 grams of 89% pure methamphetamine." (Plea Agreement 3.) Longacre's base offense level was calculated using the amount of pure methamphetamine she possessed which the DEA crime lab concluded was "379.3 grams +/- 25.1 grams." (*Id.*) The guideline calculation produced a base offense level of 32 which is satisfied, "[w]here the offense involves at least 150 grams but less than 500 grams of actual methamphetamine." (PSR ¶ 34.) The amount of methamphetamine that Longacre possessed is nowhere near 150 grams. Therefore, it is hard to imagine what argument Henderson could have made that would have led the Court to conclude that Longacre actually possessed a third of the methamphetamine that the DEA lab determined was present at the scene. Accordingly, Longacre cannot show that her representation was deficient on this point.

For the same reason, the Court concludes that Longacre was not prejudiced by Henderson's failure to argue the amount or purity of her drugs. Any argument Henderson may have made would have been unlikely to sway the Court. Longacre's motion to vacate her sentence on this issue will be denied.

### C. Failure to challenge a leadership role

Longacre also claims that Henderson's representation was deficient because she failed to challenge the finding that Longacre had a leadership role in the drug operation warranting a two-point addition to her base offense-level. Longacre did not stipulate to a leadership role in her plea agreement. Rather, the probation office found, and the Court agreed, there was enough evidence

7

to suggest that she was "an organizer, manager, leader or supervisor" of the criminal activity. (PSR ¶ 39.)

Contrary to Longacre's claim, Henderson did initially challenge her role in the crime, but chose to refrain from doing so at sentencing for strategic reasons. Henderson provides correspondence between herself and the Government during plea negotiations wherein she asked for a stipulation that Longacre did not have a leadership role in the drug operation. (Plea Offer, ECF No. 51-2, PageID.175.) The Government declined to make such a stipulation, calling the leadership enhancement "too close to call." (*Id.*, PageID.178.) While the argument that the leadership enhancement should not apply was still available at sentencing, Henderson explained in a letter to Longacre that she did not recommend making the argument for two reasons. First, because it was unlikely to succeed. And second, because she worried that if she challenged the enhancement, the Government would put on evidence of her leadership role, resulting in the judge "assigning three points if she f[ound] that the criminal activity was extensive." (Sentencing Strategy Letter, ECF No. 51-4.) Henderson's explanation, and the presumption that counsel's conduct was sound strategy, are sufficient to defeat Longacre's claim. Even if Henderson's analysis was incorrect and Longacre would have been better served by a challenge to her role in the crime, the claim is unavailing. *Strickland* "does not guarantee perfect representation, only 'a reasonably competent attorney.'" *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citing *Strickland*, 466 U.S. at 687).

Were Henderson's performance deficient, Longacre's claim would still fail because she cannot show that she was prejudiced by the alleged deficiency in representation. The PSR cited several pieces of evidence that Longacre played a leadership or managerial role in the drug operation. The contents of Longacre's phone showed she "exercised decision-making authority,

recruited and/or directed accomplices, participated in the planning or organizing of the offense, and exercised control and authority over others." (PSR ¶ 39.) There is no evidence that if Henderson were to challenge this particular enhancement, it would have been reasonably likely to lead to a different outcome. *See Strickland*, 466 U.S. at 694. Therefore, this claim fails on both prongs of the *Strickland* analysis, and Longacre's motion to vacate her sentence will be denied on this issue.

### D. Failure to communicate the source of the sentence

Finally, Longacre claims that Henderson's representation was deficient because she failed to communicate with her, generally, and specifically, that her sentence of 120 months was the result of a "mandatory minimum."

First, Longacre's sentence was not the result of a mandatory minimum. Her recommended sentencing range of 108-135 months was based on the Federal Sentencing Guidelines, which are advisory. Second, there is no general duty to "communicate" under *Strickland*. Longacre does not elaborate on what else Henderson failed to communicate, or how this impacted her case. In some instances, courts have interpreted *Strickland* to impose a duty for defense counsel to "communicate" plea agreements with favorable terms. *See e.g.*, *Missouri v. Frye*, 566 U.S. 134, 137 (2012) (holding that "counsel was deficient in failing to communicate to defendant prosecutor's written plea offer before it expired.") Longacre makes no such claim here. In fact, the record shows that Henderson frequently communicated with her client. Henderson claims they had numerous in-person meetings and attaches three exhibits of letters she sent to Longacre. (Henderson Letters to Longacre, ECF No. 51-2, PageID.177-178; ECF No. 51-3, PageID.180-184; ECF No. 51-4, PageID.186; Henderson File Mem.)

Even if Longacre could show that Henderson failed to communicate with her to a degree that rendered her performance deficient, Longacre has made no allegations about how she was

9

prejudiced as a result. Therefore, her claim fails on both *Strickland* prongs and her motion to vacate will be denied as to this issue.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to vacate her sentence will be denied as to the claims that trial counsel failed to communicate with her, failed to argue the amount and purity of the methamphetamine she was arrested in possession of, and failed to argue that she should not be subject to a leadership enhancement. The Court will hold an evidentiary hearing on the remaining issue at a date and time to be determined. The Court will enter an order consistent with this Opinion.

Dated: November 6, 2023            /s/ Hala Y. Jarbou
                                                      HALA Y. JARBOU
                                                      CHIEF UNITED STATES DISTRICT JUDGE